In the Matter of Supplementary Proceedings: D., L. & W. COAL
Co., Judgment Creditor, *v.* JOHN G. KENLON, Judgment Debtor.

City Court of New York, New York County, February 24, 1937.

*Clarence J. Shearn* [*Raymond A. Carter*, of counsel], for the
judgment creditor.

*Kleban & Bernstein*, for the judgment debtor.

*Thomas Stokes*, for the third party.

MADIGAN, J. These are two applications under section 794
of the Civil Practice Act (added by Laws of 1935, chap. 630).

The third-party subpœna referred to on this motion was served
November 29, 1935. On December 7, 1935, the judgment debtor
notified the third party that " any moneys due " to the judgment
debtor " have been assigned " to the father of the judgment debtor.
The father of the judgment debtor resides in the State of New
Jersey.

This application was first noticed for December 14, 1936, on which date the judgment debtor and the third party appeared by counsel in opposition to the making of an order pursuant to section 794 of the Civil Practice Act.

Thereupon the court called for evidence of the assignment asserted by the judgment debtor, the court at the same time requiring that the alleged assignee receive twenty days' notice of the applications by registered mail directed to him at his residence in the State of New Jersey.

To that end there issued from this court a further order to show cause returnable January 15, 1937, and a copy of it was mailed to and received by the alleged assignee at his residence in the State of New Jersey. The receipt obtained by the post office department is made a part of the papers on each of these motions.

On the return day, January 15, 1937, the alleged assignee did not appear. The judgment debtor and the third party again appeared by counsel and opposed the applications.

The amendment of 1935, providing for the mandatory order referred to in section 794 of the Civil Practice Act, was much needed. That it is most useful is shown by the great number of applications being made and granted pursuant to section 794 of the Civil Practice Act. That it may not come into disrepute, the courts have been alert to make no order which might result in a third party having to pay his debt twice. On the other hand, the purpose of the amendment is not to be defeated by the wily procedure of averring a prior assignment to a non-resident assignee, an assignment as to the making of which there can be furnished no evidence such as to clearly indicate verity. The test to be applied is whether sufficient evidentiary facts are shown to fairly support the averment that assignment was in fact made. If an issue is plausibly indicated, that issue is not to be tried out on an application under section 794 of the Civil Practice Act.

In this instance, though given an opportunity to furnish proof of the assignment, the debtor and the alleged assignee failed to do so. The debtor refers to an alleged conversation with his father: " I merely stated in June or July, 1935, that to secure an $11,000 indebtedness I was assigning all salaries that were to come due to me from " the third party. The alleged assignee says nothing. For the third party, it is averred that on November 29, 1935, the judgment debtor had an alleged claim against the third party in an amount exceeding $418 which the judgment debtor claimed to be due to him from the third party; that at said time and at all times until May 26, 1936, the third party asserted a claim against the judgment debtor " for a sum in excess of the amount of

any and all claims of the judgment debtor " against the third party; that on May 26, 1936, " these cross-claims were settled and adjusted by the third party agreeing to pay to the alleged assignee $2,750;" that of this amount $1,551.58 was paid on May 26, 1936, and that the balance of $1,198.42 was retained by the third party subject to "the direction of any court of competent jurisdiction, or $418 thereof pursuant of the joint direction" of the alleged assignee and the judgment creditor. It is proved on this application that the $1,551.58 was paid by check of the third party to the order of the judgment debtor and that the check was indorsed by the judgment debtor, but never indorsed by the alleged assignee. The conversation between the debtor and his father, the alleged assignee, does not amount to an executed, accepted assignment. The court could not grant an order pursuant to section 794 of the Civil Practice Act, if there were any evidence fairly indicating the assignment asserted by the judgment debtor; but what has been furnished is set forth above, and it fails to fairly indicate that there was any such assignment. There is no evidence which plausibly supports the claim of assignment.

The alleged assignee has been duly notified by registered mail, pursuant to the direction of the court, of this application. He has actually received the notice directed by the court. He has not responded. Jurisdiction is not the question here. The court has jurisdiction of the *res*, the obligation of the third party, as that obligation stood when the third-party subpoena was served. Such obligation is affected because a statute renders it subject to the third party process. The alleged assignee has had opportunity, reasonable under all the circumstances, to be heard. He has had notice reasonable to afford such opportunity. There has been " notice   *   *   *   sufficient in substance to constitute due process of law " (Civ. Prac. Act, § 794). All that is necessary to sustain jurisdiction is found here. The court is, therefore, obliged to overrule the objections built upon the rights of the alleged assignee, objections to the effect that the court is without jurisdiction to make an order pursuant to section 794 of the Civil Practice Act.

It is contended that section 684 of the Civil Practice Act is, in effect, an exemption statute. There are cases in which reference has been made to the lien of an execution and in which it is pointed out that under an execution there can be no levy against prospective earnings other than a levy authorized by the statutory provisions now found in section 684. (*Hayward* v. *Hayward*, 178 App. Div. 92; *Valentine* v. *Williams, Inc.*, 159 N. Y. Supp. 815; affd., 179 App. Div. 884; 223 N. Y. 574; *Rolt-Wheeler* **v.** *Rolt-Wheeler*, 175 App. Div. 852.)

Section 684 of the Civil Practice Act is derived indirectly from section 1391 of the Code of Civil Procedure. In 1903 (Laws of 1903, chap. 461) provisions for the execution against earnings to accrue were added to section 1391 of the Code of Civil Procedure. Those statutory additions to the remedies of judgment creditors obviously did not abridge or take away any remedy judgment creditors then had. They were not intended to create any " exemption " for the benefit of judgment debtors. Prior to the adoption of the " garnishee execution " by said chapter 461 of the Laws of 1903, no execution against prospective earnings was provided for in this State. Moreover, in 1903 and until September 1, 1935, supplementary proceedings were supplementary to execution and did not affect " after-acquired property " to any extent whatever. Chapter 461 of the Laws of 1903 authorized a new form of execution. That statute could not have been intended to create an " exemption " as to future earnings; for future earnings could not be reached by execution prior to such enactment of 1903. The purpose was to enlarge, not to restrict, the remedies of judgment creditors.

An exemption statute to which reference should be made is the statute known as section 792 of the Civil Practice Act (added by Laws of 1935, chap. 630). It exempts, to the extent stated therein, past earnings. The memorandum published by the court following the argument on December 14, 1936, suggested that the judgment debtor might, if properly he could, furnish proof to show that the fund is exempt. But the judgment debtor has submitted no affidavit to the effect that the fund represents " earnings * * * necessary for the use of a family wholly or partly supported by his labor " (Civ. Prac. Act, § 792).

Section 792 of the Civil Practice Act is a very old statute. It antedates the Code of Civil Procedure. Its substance, in part its very language, was carried into the Civil Practice Act and was retained in the revision of supplementary proceedings which became effective September 1, 1935. Section 792 of the Civil Practice Act does not in terms exempt earnings accruing after the institution of supplementary proceedings, but, of necessity, it has been construed as not being intended to give judgment creditors the right to tie up or appropriate the earnings of judgment debtors as such earnings accrue. (See *6-8-10 Barrow Street, Inc.,* v. *Pennefather,* 164 Misc. 18.) It is inconceivable that the Legislature intended that any person could be indefinitely deprived of all future earnings through the instrumentality of third-party supplementary proceedings and an order under section 794 of the Civil Practice Act, or otherwise. The effect might be calamitous to many wage earners and salaried people. It is clearly the public policy of this State

that a wage earner or a salaried person shall have the right to his earnings as they accrue excepting in so far as that right has been abridged by the Legislature. No limitation of that right is to be discovered in any statute unless clearly expressed. By no New York statute is it intended that those who work to live be kept alive by doles while creditors take every cent of their earnings as same accrue. Neither the third-party supplementary proceeding nor the mandatory order referred to in section 794 of the Civil Practice Act is intended to have such effect. Moreover, payment to a judgment debtor of earnings to accrue is not to be restrained by the service of a third-party order or subpoena upon the employer of the judgment debtor for the purpose of subsequent appropriation by a judgment creditor pursuant to section 794 of the Civil Practice Act or for any other purpose.

Further light is thrown on this subject by language found in section 793 of the Civil Practice Act (added by Laws of 1935, chap. 630): " * * * after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him." So far as earnings are concerned, that language would be unnecessary if all the earnings of a judgment debtor, as they come due, could be taken by a judgment creditor provided they were not necessary for the support of the judgment debtor or his family. Again, inasmuch as section 793 of the Civil Practice Act provides that a part, to be fixed by the court, of a judgment debtor's earnings may be obtained by a judgment debtor as same accrue, that statute, section 793, indicates that all of same may not be taken as they accrue.

While this third party holds a fund, it is a fund accumulated, partly at least, in disregard of the right of the judgment debtor to have his earnings as they accrued. Naturally a third party will strictly and literally obey a third-party subpoena or order. But by claiming more than his rights, a judgment creditor is not properly to be allowed to obtain, as the result of a third-party order, salary of the judgment debtor which accrued after the institution of the third-party supplementary proceeding. To allow that would be to allow the judgment creditor to obtain something which the law does not permit him to so seize by reason of the judgment. Therefore, in each of these proceedings the judgment creditor should be confined to such amount, if any, as the statute rendered subject to the third-party process. A different result is not to be reached here merely because the third-party says it holds a fund; for such fund resulted from the illegal retention of earnings not properly affected by the third-party subpoena. Though the right of a salaried person to his earnings as they accrue may be abridged by the Legislature, such right is not to be abridged by misapplication of the third-party supplementary proceeding.

In each of the present proceedings the only earnings which could properly have been affected by the third-party subpœna were earnings which accrued prior to the time when the third-party supplementary proceeding was instituted. That a counterclaim then existed in favor of the third party against the judgment debtor is averred. Accordingly, the amount then affected by the third-party subpœna would be reduced by the amount of such counterclaim; for in that regard the judgment creditor stands in the shoes of the judgment debtor.

In view of what is said above, it will be seen, from an examination of the motion papers, that they do not indicate that any specific amount in the hands of the third party is properly withheld from the judgment debtor.

On behalf of the judgment creditor it is suggested that the amount held by the third party has lost its character as " earnings " by reason of the settlement referred to above. But how that could be is not clear inasmuch as salary was, so far as appears, the only source of indebtedness from the third party to the judgment debtor. In any event, neither third-party subpœna authorized the retention of salary which accrued after the institution of the third-party supplementary proceeding.

The motion is denied without prejudice to an application pursuant to section 795 of the Civil Practice Act (added by Laws 1935, chap. 630).

On Reargument, March 31, 1937.

The judgment debtor contends that the fund is essentially " salary." The judgment creditor contends that it is not. Section 794 of the Civil Practice Act does not contemplate a trial.

In 1935 the Legislature was induced to adopt provisions relating to the mandatory order which are now incorporated into section 794 of the Civil Practice Act. Prior to September 1, 1935, the mandatory order was of more restricted application, and the procedure for appropriation by a judgment creditor of an indebtedness owing to the judgment debtor was indirect and cumbersome. The appointment of a receiver for small amounts often rendered it impractical. Justices of this court revived discussion which had been slumbering for years. The then chairman of the committee of the New York County Lawyers' Association, known as the Committee on the City Court of the City of New York, took up the matter, support of others was enlisted, and the scope of the mandatory order was extended. A much needed forward step was taken, but the disadvantages, even dangers, of the procedure thus authorized were realized by the friends of that legislation. It was

then well understood and is now well understood that applications for this mandatory order must be handled with the greatest of care if the procedure is not to come into disrepute. Conservatism — where possible, certainty — is to be the guide, so that as the result of the insistence of a judgment creditor no venturesome order be made, especially where there are close or doubtful questions as to which a trial may bring enlightenment.